<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ANTONIO MICHAEL LANS**, <br><br> Plaintiff, <br><br> v. <br><br> **STATE OF NEW JERSEY,** *et al.*, <br><br> Defendants. | Civil Action No. 24-6172 (ZNQ) (JTQ) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss (ECF No. 21) filed on May 29, 2025 by Defendants New Jersey Office of the Attorney General; State of New Jersey Judiciary, Middlesex Vicinage Probation Division, Child Support Enforcement Unit; Hon. Deborah J. Venezia, P.J.F.P.; Hon. Daniel H. Brown; Hon Barbara Clarke Stolte; James Lubrich; James Newterwitz; Elena Calingasan; Christopher Czapek; Michael Barry; Blanca Martinez; Gerhard Baumer; and Ken Bijlani (collectively, "Defendants").[1]  Defendants filed a brief in support of their Motion.  (ECF No. 21-1.)  Plaintiff Antonio Michael Lans ("Plaintiff") filed an Opposition (ECF No. 22), to which Defendants replied (ECF No. 24).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendants' Motion.

---

[1] Defendants New Jersey Department of Human Services, Division of Family Development ("DFD"), Office of Child Support Services, and Patricia Risch, Director of DFD's Office of Child Support Services join in Defendants' Motion. (ECF Nos. 26, 27.)

I.      **BACKGROUND AND PROCEDURAL HISTORY**

This action arises from proceedings conducted in New Jersey State Court that resulted in Plaintiff being ordered to pay child support for his two children. ("FAC," ECF No. 18 at 3 ¶ 8.[2]) Back in 1997, Plaintiff and his ex-wife divorced. (*Id.* ¶ 4.) At that time, Plaintiff and his ex-wife had two children, who are now 41 and 33 years old. (*Id.* ¶ 5.) According to Plaintiff, over twenty years ago he was "automatically enrolled in the New Jersey Child Support system without a court appearance or any voluntary agreements or actions on [his] part," despite no longer living in New Jersey. (*Id.* ¶ 6.) He alleges that the state court ordered him to pay $1,200 per month in child support and "imposed automatic cost of living increases for more than twenty-five (25) years." (*Id.* ¶ 8.) Plaintiff further alleges that he was improperly ordered to pay child-support after his children's eighteenth birthdays and that the state-court revoked his passport privileges. (*Id.* ¶ 9.)

In the early 2000s, Plaintiff claims that he hired a lawyer to handle his child support case, but that after he paid the lawyer, she stopped responding to Plaintiff's inquiries. (*Id.* ¶¶ 14–17.) Subsequently, Plaintiff, without counsel, filed two motions in New Jersey Superior Court. The first motion was filed on October 23, 2013, which sought financial relief and the emancipation of his two adult children. (*Id.* ¶¶ 21–23.) Defendant Hon. Barbara C. Stolte, the presiding judge, denied Plaintiff's requests for financial relief, but did emancipate his two children. (*Id.* ¶ 24.) The second motion, filed on April 8, 2019, also requested financial relief. (*Id.* ¶ 37.) Defendant Hon. Daniel H. Brown, the presiding judge, also denied Plaintiff's request. (*Id.* ¶ 41.)

Plaintiff commenced this action on May 14, 2024. (ECF No. 1.) Defendants subsequently filed a motion to dismiss (ECF No. 7), which the Court granted on April 4, 2025 (ECF No. 17). In granting the motion, the Court found that Plaintiff's pleadings failed to comport with the

---

[2] The Court cites to the FAC by its internal page number and paragraph number because Plaintiff's paragraph numbering is inconsistent.

2

requirements of Federal Rule of Civil Procedure 8, and that Plaintiff's claims were barred by the *Rooker-Feldman* doctrine to the extent they seek relief from final state court judgments. (ECF No. 17.)

Plaintiff then filed an Amended Complaint on May 2, 2025. (ECF No. 18.) Plaintiff's Amended Complaint remedies some of the pleading defects previously identified by the Court, and now clearly brings twenty-eight causes of action against Defendants. These causes of action relate to the underlying state-court judgments entered against Plaintiff, and include, among other things, counts for fraud, civil rights violations, and due process violations. As a result of these alleged violations, Plaintiff seeks numerous orders from the Court, including relief from child support, reimbursement of "all money stolen," reinstatement of Plaintiff's U.S. passport, and the removal of child support-related information from credit reporting agencies. (FAC at 64.)

## II.   SUBJECT MATTER JURISDICTION

The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and exercises supplemental jurisdiction over Plaintiff's state-law tort claims pursuant to 28 U.S.C. § 1367.

## III.   LEGAL STANDARD

Under Rule 12(b)(1), a court must dismiss a claim if it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), and to "raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 n.5 (3d Cir. 2016) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)). A Rule

12(b)(1) motion can raise a facial attack or a factual attack, which determines the standard of review. *Mazo v. Way*, 551 F. Supp. 3d 478, 489 (D.N.J. 2021).

A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law . . . or because some other jurisdictional defect is present." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id.* at 358.  "A factual attack concerns the actual failure of [plaintiff's] claims to comport with the jurisdictional perquisites." *CAN v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *see id.* ("So, for example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking.")  When considering a factual challenge, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist," the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to [the] plaintiff's allegations . . . ." *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

IV. **DISCUSSION**

A. **Eleventh Amendment Immunity**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  In other words, the Eleventh Amendment "renders unconsenting States immune from suits brought in federal courts by private parties." *Haybarger v. Lawrence County*

*Adult Probation and Parole*, 551 F.3d 193, 197 (3d Cir. 2008). This immunity has been extended to suits brought against a State by its own citizens. *See id.* at 197–98. In addition to suits against States themselves, the Supreme Court has held that the Eleventh Amendment bars suits for damages against "arms of the State." *Maliandi v. Montclair State University*, 845 F.3d 77, 83 (3d Cir. 2016). The Third Circuit has established a "fact-intensive, three-step balancing test to ascertain whether a state-affiliated entity is an 'arm of the State' that falls within the ambit of the Eleventh Amendment." *Id.* These factors are: (1) the funding factor, i.e., whether the state treasury is responsible for an adverse judgment entered against the alleged army of the State; (2) the status under state law factor, i.e., whether the entity is treated as an army of the State under state case law and statutes; and (3) the autonomy factor, i.e., whether, based largely on the structure of its governance, the entity retains significant autonomy from state control. *See id.* However, there are three primary exceptions to Eleventh Amendment immunity: (1) congressional abrogation, (2) waiver by the statute, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. *See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).

       1.    <u>Claims Against the State and State Entity Defendants</u>

Plaintiff brings claims against the State of New Jersey and numerous other defendants, including the Attorney General of New Jersey, the Superior Court of New Jersey, and a series other New Jersey Agencies (collectively, "Entity Defendants"). These claims are barred by the Eleventh Amendment. First, there is no question that the State of New Jersey is immune from Plaintiff's suit. *See Johnson v. State of N.J.*, 869 F. Supp. 289, 296 (D.N.J. 1994). Second, Courts in this District have held that the remaining Entity Defendants are "arms of the State," and therefore also protected by the Eleventh Amendment. *See Johnson*, 869 F. Supp. at 297 (holding that New Jersey Superior Court is immune from suit under the Eleventh Amendment); *Tucker v.*

5

*City of Phila.*, 679 F. Supp. 127, 140 (D.N.J. 2023) (holding that New Jersey Attorney General is immune from suit under the Eleventh Amendment); *Gattuso v. N.J. Dept. of Human Services*, 881 F. Supp. 639, 650 (D.N.J. 2012) (holding that New Jersey Department of Human Services is immune from suit under the Eleventh Amendment).

Nor do any of the exceptions to Eleventh Amendment immunity apply. None of the Entity Defendants are individual state officers, so Plaintiff's claims against the Entity Defendants may only proceed if there has been congressional abrogation or a waiver by statute. *See Pa. Fed'n of Sportsmen's Clubs, Inc.*, 297 F.3d at 323. None of these exceptions are applicable. Although Plaintiff brings twenty-eight causes of action, his claims can be grouped into two categories: (1) civil rights claims based on violations of due process under 42 U.S.C. § 1983 and (2) state-law tort claims based on fraud and theft. (FAC at 47–63.) With respect to Plaintiff's § 1983 claims, it is well-established that Congress did not abrogate a state's sovereign immunity when it enacted 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979). Similarly, Plaintiff's state-law fraud claims are also barred by the Eleventh Amendment. *See Saint-Jean v. County of Bergan*, 509 F. Supp. 3d 87, 114 (D.N.J. 2020). Indeed, the Third Circuit has held that New Jersey has not waived sovereign immunity for tort claims in federal court. *See Hyatt v. Cnty. of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009). Accordingly, Plaintiff's claims against the Entity Defendants must be dismissed.

        2.    <u>Claims Against Individual Defendants</u>

Plaintiff also brings causes of actions against Judges Barbara Stolte, Daniel Brown, Deborah Venezia ("Judge Defendants"), Hearing Officers Michael Barry and James Lubrich ("Hearing Officer Defendants"), Child Support Workers Elena Calingasan, Blanca Martinez, Christopher Czapek, James Nesterwitz, and Patricia Risch ("CSEW Defendants"), and Probation Officers Gerhard Baumer, Ken Bijlani, ("Probation Defendants"). As explained below, to the

extent Plaintiff's claims against the Individual Defendants are brought in their official capacities, they are barred by the Eleventh Amendment.

It is well-established that employees of the Superior Court that are sued in their official capacity are entitled to protection under the State's sovereign immunity. *See Beckett v. Vega*, Civ. No. 05-3443, 2006 WL 1320043, at *2 (D.N.J. May 11, 2006). This not only applies to judges, but to other employees of the judiciary, such as hearing officers. *See Torres v. Velasquez*, Civ. No. 17-1685, 2017 WL 572053, at *1 n.1 (D.N.J. Nov. 28, 2017). Moreover, courts in this district have also held that probation officers are immune from suit. *See Beckett*, 2006 WL 1320043, at *2–3. In *Beckett*, a district court held that a senior probation officer was considered a judicial employee, which was based on the State Judicial Unification Act. *See id.* Here, given that CSEW Defendants are also employees of the Probation Office, they are also protected by the State's sovereign immunity. Accordingly, Plaintiff's claims seeking monetary damages against Individual Defendants in their official capacities will be dismissed.[3]

As noted above, however, the Eleventh Amendment does not preclude suits against state officials that seek prospective or injunctive relief to remedy an ongoing violation of federal law. *See MCI Telecommunication Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491, 506 (3d Cir.

---

[3] To the extent Plaintiff brings claims for monetary damages against Individual Defendants in their personal capacity, those claims are barred by judicial and quasi-judicial immunity. It is well-established that "judges are generally immune from a suit for money damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). This immunity may only be overcome in two circumstances: (1) for actions not taken in the judge's judicial capacity and (2) actions taken in the complete absence of all jurisdiction. *See Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Given that Plaintiff challenges the judge's enforcement of child support, neither of these exceptions apply. *See Rashduni v. Dente*, Civ. No. 16-240, 2016 WL 4035437, at *3 (D.N.J. July 26, 2016). Moreover, the remaining Individual Defendants are entitled to assert quasi-judicial immunity as to the claims against them in their personal capacity. *See Russell v. Richardson*, 905 F.3d 239, 250 (3d Cir. 2018) ("Quasi-judicial immunity extends only to the acts authorized by court order, i.e., to the execution of a court order, and not to the manner in which it is executed.") Here, it appears that the actions taken by the remaining Individual Defendants consist of sending out mail related to Plaintiff's child support payments. (*See, e.g.,* FAC at 28 ¶ 8). Accordingly, they are all entitled to quasi-judicial immunity. *See Rashduni*, 2016 WL 4035437, at *3.

2001). For the reasons set forth below, Plaintiff's remaining claims are barred under the *Rooker-Feldman* doctrine.

### B. *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine, federal district courts "lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding." *FOCUS v. Allegheny County Ct. of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) (citation modified); *Lane v. New Jersey*, 725 F. App'x 185, 188 (3d Cir. 2018) ("The *Rooker-Feldman* doctrine deprives federal district courts of jurisdiction over lawsuits that essentially seek appellate review of state-court judgments."). For the *Rooker-Feldman* doctrine to apply, the following must be satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284). In other words, the *Rooker-Feldman* doctrine "applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS*, 75 F.3d at 840.

Here, the FAC seeks "swift and immediate removal from the New Jersey Child Support system," "immediate eradication and removal of all illegally, unlawfully, and fraudulently amassed arrears," "immediate rectification and removal of any Child Support related information from all credit reporting agencies," "reinstatement of [his] U.S. Passport," and other relief stemming from final judgments in state court. (FAC at 64.) Therefore, the Court finds that the

FAC meets the elements under the *Rooker-Feldman* doctrine. Plaintiff lost in state court; he is now complaining of injuries arising from those losses; the final state judgments were rendered prior to this action; and review by this Court would render the prior state judgment ineffectual. Accordingly, to the extent Plaintiff seeks relief from the state-court judgments, the Court lacks jurisdiction.[4]

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' Motion to Dismiss. Insofar as the Court finds further amendment futile, the Amended Complaint will be **DISMISSED** without prejudice and without further leave to amend. *See Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984*); Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983). An appropriate Order will follow.

Date: December 4, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[4] To the extent Plaintiff's claims concern ongoing state-court proceedings, the Court lacks jurisdiction over those claims under the *Younger* doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971). Indeed, "Courts in this Circuit have overwhelmingly abstained under the *Younger* doctrine when faced with challenges to ongoing child support proceedings." *Frederick of Family Gonora v. Risch*, Civ. No. 23-893, 2023 WL 8271932, at *4 (D.N.J. Nov. 30, 2023) (collecting cases).